UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X

**DONTAE SEBBERN**,

                     Petitioner,

          -against-

**UNITED STATES OF AMERICA**,

                     Respondent.

------------------------------------------------------------X

           **MEMORANDUM
DECISION AND ORDER**
10-cr-00087 (AMD)

**ANN M. DONNELLY**, United States District Judge:

The *pro se* petitioner, Donte Sebbern, petitions for a writ of habeas corpus pursuant to 28 U.S.C. § 2255. (ECF No. 199.) On December 21, 2012, a jury convicted the petitioner of racketeering, racketeering conspiracy, murder in aid of racketeering, conspiracy to commit murder in aid of racketeering, unlawful use and discharge of a firearm, being a felon in possession of a firearm, conspiracy to distribute cocaine and cocaine base, and possession of narcotics with intent to distribute.[1] (ECF No. 195.) The Honorable Sandra L. Townes sentenced the petitioner to life imprisonment on each of the three top counts of the indictment—racketeering, racketeering conspiracy and murder in aid of racketeering—with lesser sentences on the remaining counts.[2] (*Id.* at 3.) The Second Circuit affirmed his conviction on December 16, 2015, *United States v. Sebbern*, 641 F. App'x 18 (2d Cir. 2015) (summary order), and the Supreme Court denied a timely petition for writ of certiorari on October 3, 2016, *Sebbern v. United States*, 137 S. Ct. 280 (mem.).[3]

---

[1] The jury acquitted the petitioner of using a firearm in connection with the drug trafficking conspiracy.

[2] The case was reassigned to me on February 21, 2018.

[3] I denied the petition of the co-defendant, Dexter Waiters, on July 13, 2020. *See Waiters v. United States*, 472 F. Supp. 3d 7 (E.D.N.Y. 2020).

In seeking habeas relief, the petitioner claims that Judge Townes' jury instructions in connection with the Racketeer Influenced and Corrupt Organizations ("RICO") charge and on possession with intent to distribute were incorrect, and that his sentence was excessive.  He also says that his trial and appellate lawyers were ineffective, and that his firearms conviction was improper based on the Supreme Court's recent decision in *United States v. Davis*.  (ECF No. 199.)  The Government opposes.  (ECF No. 209.)  For the reasons that follow, the petition is denied.

## BACKGROUND

### I.   Overview[4]

In 2009, the petitioner was a member of the Gorilla Bloods, a subset of the national Bloods street gang.  He sold cocaine and crack from co-defendant Dexter Waiters' home in Port Richmond, Staten Island.  On November 7, 2009, Waiters shot and killed Jermaine Dickersen, a high-ranking member of a different subset of Bloods based in the Arlington neighborhood of Staten Island.  Police arrested the petitioner and Waiters as they fled from the murder scene in a car riddled with bullet holes; both were wearing military-grade bulletproof vests and carrying guns.

### II.   The Trial

The petitioner and Waiters went to trial before Judge Townes and a jury in December of 2012.  (ECF Nos. 128-32, 147-50.)  The Government's evidence at trial included the testimony of nine civilian witnesses, including three former Bloods, multiple state and federal law

---

[4]  Because the petitioner was convicted, I summarize the facts in the light most favorable to the verdict.  *Garbutt v. Conway*, 668 F.3d 79, 80 (2d Cir. 2012).

enforcement officers, experts in ballistics and DNA, and a medical examiner.[5]  The evidence

established the following facts:

During the early 2000s, the petitioner and Derek Waiters sold drugs in Staten Island.

Waiters joined the Gorilla Bloods gang, a "set" within the "Stone Nation" faction of the national

Bloods street gang, while he was in prison.  At the time of his release in 2008, Waiters was a

high-ranking member of the gang, and inducted others from his Port Richmond neighborhood,

including the petitioner, Earl Mangen, Anthony Johnson, Elvis Byrd and Aaron Thomas.  (Tr. at

808-13, 888-90.)  Over the next two years, the gang sold crack cocaine from Waiters' house.[6]

(*Id.* at 888-97, 1192-93, 1754-58.)  In July of 2009, a police officer stopped the petitioner for

running a stop sign; the petitioner had approximately 5 grams of crack cocaine and marijuana in

his car and was arrested.  (*Id.* at 737-52.)

On November 6, 2009, Waiters hosted two high-ranking members of the Gorilla

bloods—Tyreen Harley, a "GF" or "godfather"[7] from Brooklyn, and Joshua Demellier from

upstate New York.  (*Id.* at 913-16.)  Later that night, they went to a party at an unlicensed social

club in the Arlington neighborhood of Staten Island.  (*Id.* at 1493-95, 1503-04.)  Members from

the "Nine Trey Bloods," a different faction, also attended the party, including Jermaine

Dickersen, a high-ranking member.  (*Id.* at 1318-19, 1506-08.)  At one point during the party,

---

[5]  The defense did not present any evidence.

[6]  The parties stipulated that on July 5, 2005, the petitioner, "represented by counsel," admitted in "an official proceeding" that he "knowingly and unlawfully possessed . . . more than an eighth of an ounce" of cocaine.  (Tr. at 1571.)  In June of 2005, a detective in Staten Island stopped the petitioner's car because it did not have a license plate; the petitioner handed the detective a forged temporary license plate.  (*Id.* at 1390.)  The detective arrested him and took him to the 112th precinct.  The detective found 27 small bags of crack cocaine in the petitioner's shoe.  (*Id.* at 1391-94.)

[7]  The godfather is at the top of the Gorilla Bloods hierarchy, followed by the "high OG," the "low OG," five-star generals, four-star generals, and so on down to one-star generals, with soldiers at the bottom. (Tr. at 815, 826.)

Dickersen and other members of the Nine Trey Bloods went to the back of the club to smoke marijuana; members of the Gorilla Bloods group, including Waiters, Harley and Demellier, came to the back area shortly after.  (*Id.* at 1512-13.)  Mangen, a Gorilla Blood, introduced Harley to the Nine Trey Bloods as the "Big Homey," a high-ranking member of the Gorilla Bloods.  (*Id.* at 1515.)  After exchanging Bloods handshakes, Dickersen "G-checked" Harley—asking him how he obtained his rank, who initiated him and other facts about his membership to see if he was "official."  (*Id.* at 1516-19.)  Harley answered the questions, but in a cocky and aggressive way.  (*Id.* at 1520.)  Harley returned to the party, but Dickersen was skeptical about his claimed rank within the Bloods.  (*Id.* at 1522-23.)

About an hour later, Harley became angry and aggressive with a woman who spurned his advances.  He cursed at her as she walked away, and bumped into Elome Guinn, a member of the Nine Trey Bloods, causing Guinn to spill his drink.  (*Id.* at 1531-33.)  They argued, and Harley punched Guinn in the face.  (*Id.* at 1536.)  Guinn and other Nine Trey Bloods attacked Harley.  (*Id.* at 1536-37.)  Other Gorilla Bloods tried to intervene, but Dickersen held them off.  (*Id.* at 1537-38.)

A second fight broke out when Demellier sucker punched Dion Nelson, a member of Dickersen's group.  (*Id.*)  Nelson and others punched Demellier, who pulled out a gravity knife to defend himself.  (*Id.* at 1540-41.)  Nelson then shot Demellier, and the crowd fled the club.  (*Id.* at 1542.)  Once outside, Harley berated the petitioner and the other Gorilla Bloods for not coming to his aid.  (*Id.* at 1547-49.)

After the party broke up, Dickersen and others went to the nearby Holland Houses, and then decided to get breakfast.  (*Id.* at 536-40.)  As they waited for a car, the petitioner and

4

Waiters, both wearing dark clothing and hoods, approached from the parking lot.  They opened fire and killed Dickersen.  (*Id.* at 541, 1579-80.)

Police officers from the 120th precinct were at the social club and responded to the call for shots fired.  (*Id.* at 621.)  As they approached the parking lot, a black Mercedes "took off quickly, ran the stop sign at Holland and Benjamin, almost striking" one of the police cars.  (*Id.* at 704-05, 576-78.)  The officers turned on their lights and tried to stop the Mercedes, which turned back into the parking lot.  (*Id.* at 624.)  The car stopped for a moment and the petitioner jumped out of the passenger side and ran towards the Holland Houses.  (*Id.* at 626.)  Officers Pena and Aguillo chased the petitioner, who tripped over a cement stoop and fell, and dropped a silver revolver.  (*Id.* at 626-27, 1102-04.)  The officers handcuffed him and secured the weapon.  (*Id.* at 627.)  The petitioner was wearing a bulletproof, military-grade vest.  (*Id.* at 627, 1105.)

Meanwhile, the petitioner's brother, who was driving the Mercedes, fled from the car with an officer in pursuit.  Waiters fell from the rear drivers' side and dropped a 9 mm handgun.  (*Id.* at 668-69.)  Officers tackled and handcuffed him.  (*Id.* at 668-71, 1277.)  Waiters was also wearing camouflage military-grade bulletproof vests and was barefoot.  (*Id.* at 581, 670-71.)

Dickersen was pronounced dead at the hospital.  (*Id.* at 777.)  The medical examiner who performed the autopsy removed a bullet from Dickersen's body; the NYPD ballistics lab matched the bullet to Waiters' gun.  (*Id.* at 781-85, 1926-29.)

## III.   Jury Charge, Verdict and Sentencing

In her charge to the jury, Judge Townes explained the elements of each count of the indictment.  In particular, Judge Townes listed each racketeering act, including distribution of cocaine and cocaine base, murder, and conspiracy to murder.  She also explained that to establish a racketeering conspiracy, the government had to prove that the petitioner "participated in some

5

manner in the overall objective of the conspiracy, and that the conspiracy involved . . . the commission of two of the racketeering acts." (Tr. at 2521.) In addition, she explained that the jury was not required to find that the petitioner "personally participate[d]" in the murder to find him guilty of the murder charge, so long as they found that each of the RICO elements existed beyond a reasonable doubt. (Tr. at 2512.) Finally, Judge Townes instructed the jury that to find the petitioner guilty of possession with intent to distribute, they must find that he "knowingly and intentionally" joined a conspiracy with the intent to distribute a controlled substance. (*Id.* at 2539.)

The jury convicted the petitioner of racketeering, racketeering conspiracy, murder in aid of racketeering, conspiracy to commit murder in aid of racketeering, unlawful use and discharge of a firearm, being a felon in possession of a firearm, conspiracy to distribute cocaine and cocaine base, and possession of narcotics with intent to distribute. (Tr. at 2617-44.) Judge Townes sentenced the petitioner to life imprisonment on each of the three top counts of the indictment—racketeering, racketeering conspiracy and murder in aid of racketeering—and concurrent terms of 120 months each for conspiracy to commit murder in aid of racketeering and being a felon in possession of a firearm, 480 months for conspiracy to distribute cocaine and cocaine base, 240 months for possession of narcotics with intent to distribute, and 60 months for unlawful use of a firearm to run consecutively. (ECF No. 184 at 28-29.) The 60-month term was to run consecutively to the other terms.

## IV.   Second Circuit Appeal

The petitioner, represented by counsel, appealed his conviction to the Second Circuit Court of Appeals and made multiple claims. He argued that the evidence against him was insufficient. He also objected to Judge Townes' charge on aiding and abetting, and claimed that

6

the government withheld evidence in violation of *Brady* in connection with the stop of the car in which he was riding shortly after the murder and that the stop violated the Fourth Amendment. *United States v. Sebbern*, 641 F. App'x at 20.  He also challenged the admission of "letters and phone calls made by [the petitioner] and Waiters after the arrest."  *Id.*  He also claimed that the cocaine seized from him in July of 2009 should have been suppressed, or that Judge Townes should have instructed the jury on "mere possession" in connection with the charge of possession with intent to distribute.  *Id.*

The Second Circuit affirmed the conviction, holding that "a rational juror could have found that defendants planned to murder Dickersen, and that they did in fact murder him, in order to placate or impress Harley, a high-ranking member of their gang who had recently rebuked defendants for failing to oppose Dickersen at the party."  *Id.* at 20-21.  The court also rejected the petitioner's other challenges.

## DISCUSSION

28 U.S.C. § 2255 permits a "prisoner in custody under sentence of a court" to "move the court which imposed the sentence to vacate, set aside or correct the sentence" on the "ground that the sentence was imposed in violation of the Constitution or laws of the United States."  28 U.S.C. § 2255(a).  The Court "shall vacate and set the judgment aside" if the Court finds that "there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack."  § 2255(b).  In ruling on a § 2255 motion, the Court construes a *pro se* petitioner's submissions liberally and interprets them "to raise the strongest arguments that they suggest."  *Fulton v. Goord*, 591 F.3d 37, 43 (2d Cir. 2009) (citations omitted).

7

"In general, a defendant is barred from collaterally challenging a conviction under § 2255 on a ground that he failed to raise on direct appeal." *United States v. Thorn*, 659 F.3d 227, 231 (2d Cir. 2011) (citations omitted); *see also Marone v. United States*, 10 F.3d 65, 67 (2d Cir. 1993) ("A § 2255 petition may not be used as a substitute for direct appeal.") (citations omitted). "An exception applies, however, if the defendant establishes (1) cause for the procedural default and ensuing prejudice or (2) actual innocence." *Thorn*, 659 F.3d at 231 (citations omitted).

While "[n]egligence on the part of a prisoner's postconviction attorney does not qualify as 'cause,'" *Maples v. Thomas*, 565 U.S. 266, 280 (2012) (citation omitted), "[i]neffective assistance of appellate counsel may constitute cause for a procedural default," *Xiang v. United States*, No. 09-CV-7579, 2010 WL 3155052, at *4 (S.D.N.Y. Aug. 6, 2010) (citing *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000)). To establish appellate counsel's ineffectiveness, the petitioner must show "first, that appellate counsel committed errors so serious as to be objectively unreasonable and, second, that the result of the proceeding would likely have been different in the absence of counsel's errors." *Id.* (citing *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984) (citation omitted)). The petitioner must establish that he suffered "actual prejudice resulting from the errors of which he complains;" not the "*possibility* of prejudice," but that the errors "worked to his *actual* and substantial disadvantage." *United States v. Frady*, 456 U.S. 152, 168-70 (1982) (emphasis in original). In the alternative, the petitioner may avoid procedural default if he can show that he is actually innocent. *Thorn*, 659 F.3d at 231. "To establish actual innocence, petitioner must demonstrate that, 'in light of all the evidence,' it is more likely than not that no reasonable juror would have convicted him." *Bousley v. United*

*States*, 523 U.S. 614, 623 (1998) (quoting *Schlup v. Delo*, 513 U.S. 298, 327-28 (1995) (citation omitted)).

The petitioner asserts five grounds for habeas relief, none of which he raised on direct appeal.  He claims that his trial and appellate counsel were ineffective, that his sentence was excessive, that Judge Townes' jury instructions on the RICO charge and on possession with intent to distribute were incorrect, and that *United States v. Davis* requires vacatur of his conviction for the unlawful use of a firearm.  Except for the ineffective assistance of counsel claims, which "may be brought in a collateral proceeding under § 2255, whether or not the petitioner could have raised [them] on direct appeal," *Massaro v. United States*, 538 U.S. 500, 504 (2003), and his *Davis* claim, which he could not have made at the time of his appeal, the petitioner is barred from challenging the other claims collaterally unless he can establish cause and prejudice, or that he is actually innocent.

a.  *Ineffective Assistance of Appellate Counsel*

A petitioner claiming that his lawyer was ineffective must meet the two-pronged test articulated in *Strickland v. Washington*: (1) "that counsel's representation fell below an objective standard of reasonableness," and (2) "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  466 U.S. 668, 694 (1984).  The *Strickland* standard applies to claims of ineffective assistance of appellate counsel.  *See Claudio v. Scully*, 982 F.2d 798, 803 (2d Cir. 1992) ("Although *Strickland* addressed the constitutional standard for ineffective assistance of counsel in the trial counsel context, our Circuit has also adopted the *Strickland* two-prong test in assessing the effectiveness of appellate counsel.") (citation omitted).  Accordingly, the petitioner must show that (1) his

9

attorney's performance was deficient, and (2) that this deficiency caused him prejudice. *Strickland*, 466 U.S. at 694.

Under the first prong of Strickland, "[a] convicted petitioner . . . must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Strickland*, 466 U.S. at 690. "Judicial scrutiny of counsel's performance must be highly deferential," and courts "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id*. at 689. "[R]elief may be warranted when a decision by counsel cannot be justified as a result of some kind of plausible trial strategy." *Jackson v. Leonardo*, 162 F.3d 81, 85 (2d Cir. 1998) (citing *Kimmelman v. Morrison*, 477 U.S. 365, 385 (1986)).

To satisfy the second prong, the petitioner must establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "The level of prejudice the [petitioner] need demonstrate lies between prejudice that 'had some conceivable effect' and prejudice that 'more likely than not altered the outcome in the case.'" *Lindstadt v. Keane*, 239 F.3d 191, 204 (2d Cir. 2001) (quoting *Strickland*, 466 U.S. at 693). "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686.

"As in all ineffective assistance of counsel claims, the movant must overcome a strong presumption that counsel exercised reasonable professional judgment: 'Appellate counsel does not have a duty to raise all colorable claims on appeal; rather, counsel should use reasonable discretion to determine which claims constitute a defendant's best arguments for obtaining a reversal of a conviction.'" *Figueroa v. United States*, No. 17-CV-9505, 2019 WL 6338420, at

10

*3 (S.D.N.Y. Nov. 26, 2019) (quoting *Forte v. LaClair*, 354 F. App'x 567, 569 (2d Cir. 2009)).

An appellate attorney is ineffective for failing to raise a claim only if the petitioner shows that

"counsel omitted significant and obvious issues while pursuing issues that were clearly and

significantly weaker." *Forte*, 354 F. App'x at 569 (quoting *Mayo v. Henderson*, 13 F.3d 528,

533 (2d Cir. 1994)).

The petitioner has multiple complaints about his appellate lawyer, none of which have

merit. According to the petitioner, his appellate lawyer should have sought a rehearing *en banc*

after the Second Circuit affirmed his conviction, on the theory that the evidence against him was

insufficient. He also says that counsel should have challenged a "clerical error" in the record,

indicating that the petitioner had pled guilty, and should have "investigate[d]" whether the

charge of "unlawful use of a firearm" was voluntarily dismissed. None of these arguments meet

the exacting *Strickland* standard.

Appellate counsel's decision not to request an *en banc* hearing was not ineffective. An

"*en banc* hearing or rehearing is not favored and ordinarily will not be ordered unless" . . .

consideration is necessary to secure or maintain uniformity of court's decisions . . . [or] the

proceeding involves a question of exceptional importance." Fed. R. App. P. 35. The petitioner

has not demonstrated "that there was any probability whatsoever that he would have been

granted *en banc* review . . . [or] that the result of such review would have been different from the

one on appeal. *Peeler v. United States*, 2005 WL 1719718, at *4 (D. Conn. July 22, 2005). The

court considered the petitioner's challenge to the sufficiency of the evidence and rejected it.

Indeed, the Second Circuit explicitly stated that it viewed the "evidence as a whole," and

concluded that "a rational juror could have found that" the petitioner planned to murder

Dickersen and carried out the murder "in order to placate or impress" a high-ranking member of

their gang.  *Sebbern*, 641 F. App'x at 20.  The petitioner does not point to any evidence that the

Second Circuit overlooked that would have changed the court's decision.  The petitioner's

"appellate counsel was not ineffective for failing to seek a meritless *en banc* review."  *Wee v.*

*United States*, 2015 WL 4939612, at *4 (S.D.N.Y. Aug. 19, 2015).

Next, referring to a clerical error in the original judgment, which incorrectly stated that

the petitioner pled guilty, the petitioner argues that his appellate lawyer should have "asked the

court for correction of the erroneous judgment."  (ECF No. 199 at 39.)  The petitioner's trial

counsel moved to amend the judgment to reflect that the petitioner was convicted by a jury and

did not plead guilty; the court granted the motion and amended the judgment so that it accurately

reflected the petitioner's conviction after trial.  (ECF Nos. 189, 192.)  The Second Circuit noted

the clerical error, and did not suggest that the district court committed any error in its correction.

*Sebbern*, 641 F. App'x at 19 ("The judgments entered on August 29, 2014, incorrectly indicate

that defendants pleaded guilty to several of the counts.").  In any event, the error was corrected,

so there was no argument to be made.  *Torres v. McGrath*, 407 F.Supp.2d 551, 562 (S.D.N.Y.

2006) (the "failure to make a meritless argument does not amount to ineffective assistance."

(quotation omitted)).

Finally, the petitioner claims that appellate counsel was "ineffective for failing to

investigate [the] dismissed 924(c)(1)(A) 'unlawful use of a firearm'" claim.  (ECF No. 199 at

40.)  According to the petitioner, his "docket sheet" reflects that the government dismissed the

fifth count against him; had appellate counsel investigated this dismissal, the petitioner argues,

his sentence on that count would have been vacated.  (*Id*.)  In fact, the docket sheet does not

reflect that the charge was dismissed; on the contrary, it states that Judge Townes sentenced the

petitioner to 60 months on count five to run consecutively to all other counts.  (*See* ECF No. 184

at 26.)  The petitioner's appellate counsel cannot be faulted for choosing not to advance or "investigate" a meritless claim.

> b. *Ineffective Assistance of Trial Counsel*

The petitioner is not procedurally foreclosed from raising an ineffective assistance of trial counsel claim.  *See generally Massaro*, 538 U.S. at 504 ("We hold that an ineffective-assistance-of-counsel claim may be brought in a collateral proceeding under § 2255, whether or not the petitioner could have raised the claim on direct appeal.").  Nevertheless, there is no merit to his complaints about trial counsel.

 To establish that his trial lawyer was ineffective, a petitioner must show (1) that his counsel's performance was deficient and (2) that the deficient performance prejudiced the defense.  *Strickland*, 466 U.S. 668, 687 (1984).  The petitioner claims multiple deficiencies in his trial counsel's representation, which can be grouped into different phases of the prosecution: (i) the indictment; (ii) the plea negotiations; (iii) the presentation of evidence at trial; (iv) the jury instructions; and (v) sentencing.

> i. *Indictment*

The petitioner argues that his trial counsel should have challenged the indictment.  First, the petitioner argues that his indictment was "facially defective" because he was charged with "conspiracy to distribute and possession with intent to distribute," but the indictment did not specifically "cite to 21 U.S.C. § 846," which codifies conspiracy for drug-related offenses.  (ECF No. 199 at 33.)  However, the indictment cites both 21 U.S.C. § 841(a)(1), the substantive offense, and 21 U.S.C. § 846, the conspiracy charge.  (ECF No. 85 at 5.)  Thus, any challenge based on this argument would have failed.

Second, the petitioner argues he was subjected to "obvious double jeopardy" because the indictment charged him with conspiracy to distribute narcotics as a racketeering act and a separate charge of conspiracy to distribute controlled substances.  (ECF No. 199 at 28-29.)  The Double Jeopardy Clause provides that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb" (U.S. Const., amend. V) and "confers its protections in three different situations—where there is a second prosecution for the same offense after acquittal of that offense; where there is a second prosecution for the same offense after conviction of the offense; and where there are multiple punishments for the same offense." *United States v. Estrada*, 320 F.3d 173, 180 (2d Cir. 2003).  None of those situations applies to this case.  The petitioner was not subjected to successive trials for the same offense, or to multiple punishments for the same offense.  Racketeering, for which conspiracy to distribute narcotics was a predicate act, and conspiring to distribute controlled substances are separate offenses.  Accordingly, his trial counsel could not have challenged the indictment on that ground.

The petitioner next argues that his trial counsel should have moved to dismiss the indictment on speedy trial grounds.  (ECF No. 199 at 27.)  The petitioner was arrested on November 7, 2009 on state charges and held in state custody; he was transferred into federal custody pursuant to a writ of habeas corpus *ad testificandum* on December 22, 2009.  The federal indictment in this case was filed on February 9, 2010, and the petitioner was arraigned and indicted on February 25, 2010.  (ECF Nos. 1, 4.)  According to the petitioner, the indictment should have been dismissed on speedy trial grounds because there was a delay of "approximately 60 days" between his arrest by a New York City detective and the federal indictment.  (ECF No. 199 at 27.)  The Speedy Trial Act requires the government to indict or release a defendant within thirty days of his arrest.  18 U.S.C. § 3161(b).  However, a "defendant does not become an

'accused' for Speedy Trial Act purposes until he is under federal arrest." *United States v. Lai Ming Tanu*, 589 F.2d 82, 88 (2d Cir. 1978). The transfer of a defendant from a state facility to a federal facility pursuant to a writ *ad testificandum* does not constitute a "federal arrest" under the Act. *United States v. Jones*, 129 F.3d 718, 721 (2d Cir. 1997). "The Act does not afford protection if the deprivation of liberty—however labelled—is for a reason other than requiring the defendant to answer to federal criminal charges." *Id.* The petitioner did not face federal charges until February 9, 2010. He was indicted and arraigned 16 days later, well within the time required by the Speedy Trial Act. Thus, a motion to dismiss the indictment on speedy trial grounds would not have been successful.[8]

Finally, the petitioner claims that his trial counsel should have "challenged" the felon in possession of a firearm charge (18 U.S.C. § 922(g)), but does not explain what the nature of this challenge should have been. (ECF No. 199 at 29.) There was no basis to challenge the charge.

### ii. Plea Negotiations

The petitioner faults his trial lawyer's advice during plea negotiations. (ECF No. 199 at 17.) According to the petitioner, his attorney advised him to plead guilty to a "1 count indictment" that charged him with "conspiracy to distribute 28 grams or more." (ECF No. 199 at 18.) Counsel explained that the guidelines sentence was 360 months, but that he would argue for a reduced sentence based on "mitigating factors;" the petitioner agreed to take the plea. (*Id.*) At an October 2, 2012 hearing, the magistrate judge informed the petitioner that the applicable

---

[8] Even if there had been a delay between his federal arrest and indictment, it would not result in an automatic dismissal. *United States v. Rivera*, 2009 WL 1942548, at *2 (D. Conn. July 1, 2009) (finding that the "circumstances surrounding the [56-day] delay [were] insufficient to warrant dismissal"); *United States v. Mora*, 2005 WL 1354042, at *6 (S.D.N.Y. June 7, 2005) (delay of sixty-five days did not warrant dismissal with prejudice because charged crime was sufficiently serious and delay was not the result of bad faith).

guideline sentence was a life sentence because of the petitioner's criminal history.  (*Id*. at 19.) The petitioner "became ill," and the hearing ended without a plea.  (*Id*.)

"The decision whether to plead guilty or contest a criminal charge is ordinarily the most important single decision in a criminal case . . . [and] counsel may and must give the client the benefit of counsel's professional advice on this crucial decision."  *United States v. Gordon*, 156 F.3d 376, 380 (2d Cir.1998) (citation omitted).  "In this Circuit, a defendant claiming ineffective assistance regarding plea negotiations must provide some objective evidence that counsel's errors made a difference in his decisions with respect to the plea agreement."  *United States v. Moore*, 228 F. Supp. 2d 75, 80 (D. Conn. 2002), *aff'd*, 174 F. App'x 603 (2d Cir. 2006).  *See also Goodwin v. Duncan*, 668 F. Supp. 2d 509, 519 (W.D.N.Y. 2009) ("In the context of the assistance of counsel with respect to the failure to properly advise regarding a guilty plea, a petitioner must show that but for counsel's deficient performance, there exists a reasonable probability that he would have made a different decision regarding the guilty plea.").

The petitioner has not demonstrated that he suffered any prejudice, even if his lawyer made a mistake about the sentence that he would face if he pled guilty, because the petitioner did not plead guilty.  As soon as the magistrate judge advised him that the guidelines sentence was life in prison, he opted to go to trial before a jury.  Thus, there is no basis for an ineffective assistance of counsel claim.

### iii.   Evidence

The petitioner lodges numerous complaints about his trial counsel's strategic choices during the trial.  None of these claims satisfy the exacting *Strickland* standard.

First, the petitioner contends that his trial counsel should have called additional witnesses who would have testified about his arrest on July 15, 2009, when he was arrested with 27 bags of

crack cocaine.[9]  (ECF No. 199 at 15-16.)  According to the petitioner, these witnesses, including

his grandfather, would have testified that the arresting officer's stop of the petitioner's car was

pretextual, and that the officer "assaulted" him.  (*Id.*)  "The decision whether to call any

witnesses on behalf of the [petitioner], and if so which witnesses to call, is a tactical decision of

the sort engaged in by defense attorneys in almost every trial."  *United States v. Nersesian*, 824

F.2d 1294, 1321 (2d Cir. 1987), *cert. denied*, 484 U.S. 958 (1987); *see also United States v.

DeJesus*, 57 F. App'x 474, 478 (2d Cir. 2003) ("Because of [its] inherently tactical nature, the

decision not to call a particular witness generally should not be disturbed.").  To succeed on a

claim of ineffective assistance of counsel, a "petitioner may not merely allege that certain

witnesses might have supplied relevant testimony, but must state exactly what testimony they

would have supplied and how such testimony would have changed the result."  *Edmonds v.

Purdy*, 2009 WL 483189, at \*19 (S.D.N.Y. Feb. 26, 2009).  The petitioner has not met this

burden.  Even assuming that these witnesses would have testified as the petitioner says they

would have on this relatively minor point, there is no possibility that the outcome of the trial

would have been different.

   The petitioner also argues that counsel should have put the blame on the petitioner's

brother, Jontel Sebbern; the petitioner says that the evidence allowed "the jury to infer that Mr.

Sebbern's brother was a culpable 3rd party to the crime who nonetheless escaped federal

prosecution."  (ECF No. 199 at 21-22.)  The petitioner challenges a strategic decision that was

not "so lacking in justification that there was an error well understood and comprehended in

existing law beyond any possibility for fair minded disagreement."  *Harrington v. Richter*, 562

U.S. 86, 103 (2011)*.*  Members of the Bloods testified that Jontel Sebbern was "not involved in

---

[9] This evidence was introduced in connection with the charge of possession with intent to distribute.

any gang activity" nor in "the sale of any drugs." (Tr. at 1823.) In any event, the fact that Jontel Sebbern was not also charged for his role would not have changed the evidence against the petitioner, which established his role in the murder.

The petitioner also argues that his trial counsel should have objected to the testimony of the government's firearms expert, who concluded that he "matched a bullet and casing to a particular gun to a reasonable degree of ballistic certainty." (ECF No. 199 at 25.) The petitioner argues that this characterization was misleading, and that the expert should have testified only that the ballistic comparisons were "more likely than not" to be accurate. (*Id.*) Any such objection at trial would have been fruitless. As an initial matter, the petitioner's counsel moved to preclude the expert's testimony, and that motion was denied. (ECF Nos. 60, 61.) Moreover, a ballistic expert is permitted "to testify that he reached his conclusions to a reasonable degree of certainty in the field of ballistics." *United States v. Gil*, 2017 WL 689719, at *1 (2d Cir. Feb. 21, 2017). *See also United States v. Ashburn*, 88 F. Supp. 3d 239, 249 (E.D.N.Y. 2015) (holding that "the court will limit [the ballistics expert] to stating that his conclusions were reached to a 'reasonable degree of ballistics certainty' or a 'reasonable degree of certainty in the ballistics field'").[10]

The petitioner also takes issue with a stipulation to which his counsel agreed. After the prosecution established that the petitioner possessed 27 bags of crack cocaine on July 15, 2009, the parties stipulated that the petitioner was arrested with 5.1 grams of cocaine. (Tr. at 751-52.)

---

[10] The petitioner also claims that his counsel's "concession of the alleged murder weapon" during opening arguments was "detrimental . . . as it allowed the jury to consider guilt without hearing a qualified expert testify to the means and methods of firearms examinations or how their conclusions are met." (ECF No. 199 at 23.) However, the jury heard from a firearms expert and a DNA expert, who established that the petitioner's DNA was found on the weapon that he dropped as he tried to flee the police. (Tr. at 1293.)

The petitioner argues that this stipulation violated his Sixth Amendment right to confrontation because he was not able to cross examine the forensic lab analyst who tested the substance to confirm it was cocaine.  (ECF No. 199 at 26-27.)

That the petitioner's counsel "agreed to stipulations with the government about key facts is not a valid basis for a *Strickland* claim." *Wallace v. United States*, 2021 WL 51414, at *3 (S.D.N.Y. Jan. 5, 2021).  There is "no indication that these stipulations, or the acknowledgement to the jury that certain facts were not contested, were objectively unreasonable decisions, or that they prejudiced [the petitioner] in any way." *Id.*  Indeed, laboratory evidence confirmed that the petitioner possessed cocaine in 2009.  Counsel's decision to stipulate to these easily provable facts instead of requiring witnesses to testify about them was a sound strategic decision. "Actions or omissions that 'might be considered sound trial strategy' do not constitute ineffective assistance." *United States v. Berkovich*, 168 F.3d 64, 67 (2d Cir. 1999) (quoting *Strickland*, 466 U.S. at 689).

### iv.   Jury Instructions

Next, the petitioner claims that counsel should have objected to aspects of Judge Townes' jury charge: her instructions on racketeering, and on the burden of proof.  He also argues that counsel should have objected to language on the verdict sheet.  There was no basis for objection.

First, the petitioner faults his trial counsel for failing to challenge the district court's instruction about racketeering conspiracy; he argues that the court should have included "identifiable acts" as an element of a racketeering offense.  (ECF No. 199 at 30.)  Judge Townes listed the racketeering acts charged in the indictment, including distribution of cocaine and cocaine base, murder, and conspiracy to murder and instructed the jury that to find the petitioner guilty of racketeering conspiracy, the government must prove that the petitioner "participated in

some manner in the overall objective of the conspiracy, and that the conspiracy involved . . . the commission of two of the racketeering acts charged in Count One." (Tr. at 2498-99, 2521.) Judge Townes' charge was a correct statement of the law, and there was no basis for counsel to challenge it.

Second, the petitioner claims Judge Townes' instruction on intent in connection with the charge of conspiracy with intent to distribute controlled substances was "ambiguous," "erroneously diminished the burden on the government" and "did not allow for the jury to find that the petitioner had the requisite scienter" with respect to his intent to distribute. (ECF No. 199 at 31-32.) Again, Judge Townes' instruction was correct. She explained that the jury must find that the petitioner "knowingly and intentionally" joined a conspiracy with the intent of distributing a controlled substance. (Tr. at 2539.)

Finally, the petitioner argues that his trial counsel should have objected to the wording of the verdict sheet. In particular, the petitioner challenges "the district court's omission of brandishing" from the firearms possession charge. (ECF No. 199 at 34.) A verdict form should be construed together with its attendant jury instructions. *See Smith v. Spisak*, 558 U.S. 139, 145-49 (2010). Judge Townes instructed the jury that they must find that the petitioner knowingly and intentionally possessed a firearm that was "brandished and discharged." (Tr. at 2533.) Because the court explained the elements of the offense in the jury instructions, there was no need to include the word "brandishing" on the verdict sheet and any objection based on this argument would have been futile. *United States v. Pforzheimer*, 826 F.2d 200, 205 (2d Cir. 1987) ("a jury is presumed to act logically and follow the court's instructions"); *United States v. Brown*, 669 F.3d 10, 31 (1st Cir.2012) (reviewing verdict form "as a whole, in conjunction with the jury instructions, in order to determine whether the issues were fairly presented to the jury"

20

because "a district court need not reiterate all of the elements of a crime in a verdict form if they were properly set forth in the jury instructions").

### v.   Sentencing

Finally, the petitioner says that his lawyer should have objected "to the district court's misinterpretation of the record and unreasonable fact finding at sentencing." (ECF No. 199 at 35.)  During sentencing, Judge Townes recited the pertinent facts of the petitioner's case, including that "four people and the defendant" fled after the murder.  (ECF No. 184 at 13.)

According to the petitioner, Judge Townes "relied on inadmissible hearsay and misapprehensions of the record" and considered "uncorroborated government witness testimony and erroneously stated that the only persons who were a part of their drug sales were members of the enterprise."  (*Id.*)  Since the jury convicted the petitioner of racketeering, it was appropriate for Judge Townes to consider all relevant information, even if it was not proven at trial, so long as the government proved the additional information by a preponderance of the evidence.  *United States v. Lee*, 818 F.2d 1052, 1053 (2d Cir.1987).  Accordingly, any objection during sentencing would have been futile.

### c.   *United States v. Davis Claim*

The petitioner claims that his firearms conviction under 18 U.S.C. § 924 must be vacated in light of the Supreme Court's holding in *United States v. Davis*.  (ECF No. 214.)  Section 924(c)(1)(A)(ii) provides, in relevant part:

> [A]ny person who, during and in relation to any crime of violence or drug trafficking crime (including a crime of violence or drug trafficking crime that provides for an enhanced punishment if committed by the use of a deadly or dangerous weapon or device) for which the person may be prosecuted in a court of the United States, uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm, shall, in addition to the punishment provided for such crime of violence or drug trafficking crime . . . if the firearm is brandished, be sentenced to a term of imprisonment of not less than 7 years . . . .

21

Section 924(c)(3) defines a "crime of violence" as "an offense that is a felony and"

> (A) has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or

> (B) that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

Subsection (A) is "the elements clause" and subsection (B) is "the residual clause."  In *Davis*, the Court found that subsection (B), the residual clause, was unconstitutionally vague.  *United States v. Davis*, 139 S. Ct. 2319, 2325-26 (2019).  In order for a conviction under 18 U.S.C. § 924(c) to stand, therefore, the predicate offense must be a "crime of violence" as defined by the elements clause, 18 U.S.C. § 924(c)(3)(A).  The petitioner argues that one of his convictions— racketeering conspiracy—does not constitute a "crime of violence."

The petitioner is correct that under *Davis*, "a racketeering conspiracy, defined by its elements, is not inherently a crime of violence."  *Benjamin v. United States*, 2020 WL 4887054, at *2 (S.D.N.Y. Aug. 20, 2020).  "The predicate offenses that participants in a racketeering conspiracy may engage in can encompass, for example, fraud offenses, which do not have the use of force as an element."  *Id.*  But the petitioner was convicted not only of racketeering and racketeering conspiracy, but murder in aid of racketeering and conspiracy to murder in aid of racketeering.  Judge Townes instructed the jury that these charges were "crimes of violence" for the purposes of § 924(c).  (Tr. at 2534.)

Courts in this district have consistently held that "murder in aid of racketeering under N.Y. Penal Law § 125.25 and 18 U.S.C. § 1959(a)(1) . . . meets the definition of crime of violence under § 924(c)(3)(A) (the elements clause)," because "[i]t 'has as an element the use, attempted use or threatened use of physical force against the person or property of another.'"

*Lagos v. United States*, 2019 WL 6702578, at *1 (S.D.N.Y. Feb. 28, 2019); *accord Boykin v. United States*, 2020 WL 774293, at *8 (S.D.N.Y. Feb. 18, 2020) ("Given the Supreme Court's conclusion that the intentional causation of bodily injury necessarily involves the use of physical force, it is impossible not to conclude that the intentional causation of death, as required by N.Y. Penal Law § 125.25(1), necessarily involves the use of physical force." (internal quotation marks and citation omitted)); *United States v. Erbo*, 2020 WL 6802946, at *3 (S.D.N.Y. Nov. 19, 2020) (holding that murder in aid of racketeering is a crime of violence). *See also United States v. Sierra*, 782 F. App'x 16, 20 (2d Cir. 2019) (summary order) (Murder "is a crime involving the use of [physical] force. . . . Accordingly, defendant's convictions are crimes of violence within the meaning of 18 U.S.C. § 924(c)."). "Thus, even if RICO conspiracy is no longer a crime of violence, another predicate crime remains." *Speed v. United States*, 2020 WL 7028814, at *6 (S.D.N.Y. Nov. 30, 2020).

In short, murder is a crime of violence. Thus, murder in aid of racketeering is also a crime of violence. *See Frazier v. United States*, 2021 WL 111638, at *4 (S.D.N.Y. Jan. 12, 2021).

      d. *Remaining Claims*

As explained above, the remaining claims are barred because the petitioner did not raise them on direct appeal, and has not shown cause and prejudice that would excuse the procedural default. In any event, none of the remaining claims have merit.

        i. *Jury Instructions*

The petitioner objects to two jury instructions. First, he claims that Judge Townes should have instructed the jury on simple possession as a lesser included offense of possession with intent to distribute. (ECF No. 199 at 43.) "Neither the Supreme Court nor [the Second] Circuit

has decided whether the failure to instruct the jury on lesser included offenses in noncapital cases is a constitutional issue that may be considered on a habeas petition." *Knapp v. Leonardo*, 46 F.3d 170, 179 (2d Cir.1995) (citing *Rice v. Hoke*, 846 F.2d 160, 164-65 (2d Cir. 1988)); *accord Jones v. Hoffman*, 86 F.3d 46, 48 (2d Cir.1996) (per curiam).  "Because there exists no Supreme Court precedent regarding this question" the court's decision not to include a lesser offense could not "have been contrary to, or an unreasonable interpretation of, law established by the Supreme Court." *Robinson v. Artus*, 674 F. Supp. 2d 435, 446 (W.D.N.Y. 2009), *adhered to* (Jan. 11, 2010).

Second, the petitioner claims that the district court gave an "erroneous *Pinkerton* instruction" which "relieved the burden of the government to prove each essential element of the RICO charge."  (ECF No. 199 at 45.)  Judge Townes instructed the jury that they could find the petitioner guilty of the substantive offense of "conspiring to murder Jermaine Dickersen" as long as the government proved each element of the conspiracy.  (Tr. at 2509.)  The petitioner objects to the court's instruction that "if you find all five [of the RICO elements] to exist beyond a reasonable doubt, then you may find [the] defendant guilty of the murder charged in Racketeering Act 3(a), even though he did not personally participate in the acts constituting the murder, aided or abet another person in its commission, or have actual knowledge of it."  (Tr. at 2512.)   The petitioner alleges that this instruction "diminished the element of intent."  Judge Townes' instruction was correct.  "A *Pinkerton* instruction allows a jury to find a defendant guilty on a substantive count without specific evidence that he committed the act charged if it is clear that the offense had been committed, that it had been committed in the furtherance of an unlawful conspiracy, and that the defendant was a member of that conspiracy."  *United States v.*

24

*Gallerani*, 68 F.3d 611, 620 (2d Cir. 1995) (internal quotations and citation omitted).  The jury instruction in this case was proper.

> ii.   *Sentencing*

Finally, the petitioner claims that the district court sentenced him "beyond the statutory maximum of 20 years under Count 2 racketeering conspiracy, without the jury finding facts beyond a reasonable doubt."  (ECF No. 199 at 41.)  He claims that the verdict form should have required the jury to "identify which acts formed the basis of the [racketeering conspiracy] verdict."  (*Id.*)

As explained above, it is well-settled that a verdict form should be construed together with its attendant jury instructions.  *See Spisak*, 558 U.S. at 145-49 (2010); *Pforzheimer*, 826 F.2d at 204-05 (2d Cir.1987) ("It is a fundamental proposition that a jury is presumed to follow the instructions of the trial judge . . . .").  Moreover, juries are presumed to deliberate logically and adhere to a district court's instructions.  *Pforzheimer*, 826 F.2d at 205 ("a jury is presumed to act logically and follow the court's instructions"); *accord United States v. Brown*, 669 F.3d 10, 31 (1st Cir.2012) (reviewing verdict form "as a whole, in conjunction with the jury instructions, in order to determine whether the issues were fairly presented to the jury" because "a district court need not reiterate all of the elements of a crime in a verdict form if they were properly set forth in the jury instructions").

Judge Townes charged the jury that it must find that the "defendant agreed to participate in the enterprise with the knowledge and intent that at least one member of the racketeering conspiracy . . . would commit at least two racketeering acts in the conduct of the affairs of the enterprise."  (Tr. at 2521.)  A racketeering conspiracy charge "need not specify the predicate or racketeering acts that the defendants agreed would be committed, it is sufficient to allege and

prove that the defendants agreed to the commission of multiple violations of a specific statutory provision that qualifies as RICO racketeering activity." *United States v. Applins*, 637 F.3d 59, 81 (2d Cir. 2011), *cert. denied*, 132 S. Ct. 816 (2011) (internal citations omitted).  To prove a defendant's membership in the agreement, the government does not have to prove that he committed or agreed to commit any of the charged predicate acts as long as the government proves that he participated in some manner in the overall objective of the conspiracy.  *United States v. Yannotti*, 541 F.3d 112, 129 (2d Cir. 2008) (citing L. Sand, et al. Modern Federal Jury Instructions, (Criminal) Inst. 52-32 (2000) ("the government must prove that two of these acts were, or were intended to be, committed as part of the conspiracy, although it need not prove that defendant committed or agreed to commit any of these acts as long as the government proves that defendant participated in some manner in the overall objective of the conspiracy")).  In short, Judge Townes' charge accurately stated the law.

## CONCLUSION

The petition for writ of habeas corpus is denied in its entirety.  The case is dismissed.  A certificate of appealability will not be issued.  *See* 28 U.S.C. § 2253(c).

**SO ORDERED.**

s/Ann M. Donnelly
_____
ANN M. DONNELLY
United States District Judge

Dated: Brooklyn, New York
     March 31, 2021